THE EXCELSIOR FIRE INSURANCE COMPANY AND WILLIAM M. TWEED, Jr., Receiver, &c., of the Commonwealth Insurance Company, v. THE ROYAL INSURANCE COMPANY OF LIVERPOOL.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1872.)

One who has a contract for the purchase of a mortgage, the purchase-money being payable by installments, and who has made part payment under the contract, is, in equity, the owner of the mortgage, and his insurable interest in the property covered by it is the full amount due and to become due thereupon.

An agent for plaintiff, an insurance company, having made an insurance upon property, was directed by his principal to cancel the policy. He did not do so, but applied to the agents of defendant for reinsurance upon the risk, which they refused, but consented to insure the interest of the owner in the property for the amount insured by plaintiff. The policy issued by defendant to the owner was never delivered to her, but remained in the possession of plaintiff's agent at the time the property was burned. After the fire the owner paid the premium due to defendant and assigned the policy to the plaintiff. The conditions of the policy required that in case of other insurance the defendant should pay *pro rata*. *Held*, that defendant was not liable to plaintiff as re-insurer of the risk, but that plaintiff, as assignee of the owner, could recover a part of the insurance made by the defendant, proportionate to the amount of insurance upon the property.

Whether, if the plaintiff had purchased the policy of defendant from the insured, not being liable upon the policies issued by it, the purchase would have been valid, *quere*. (Per MULLIN, J.)

A ratification by the insured of the act of her agent in making the insurance is sufficient, if made after a loss has occurred.

No request having been made on the trial to submit a controverted fact to the jury, it becomes the province of the court to determine the fact, and its decision is final.

IN August, 1865, James Connolly was owner of a grist-mill in the city of Rochester, which was subject to two mortgages of $10,000 each, held by one Dows.

In July, 1870, Mrs. Connolly, the wife of the mortgagor, entered into a contract with Dows for the purchase of said mortgages for $15,000, to be paid as follows: $2,500 to be paid down, $5,000 on the 1st of August following, and the bal-

ance in installments, which Mrs. C. covenanted to pay.     Mrs. C. made the first two payments, amounting to $7,500.

In December, 1870, Mr. C., acting for his wife, but without any express authority from her, applied to William McCarthy, an insurance agent in Rochester, for an insurance on the mortgage interest of his wife in said mill to the amount of $7,500.     McC. was agent for the Excelsior and Commonwealth Insurance Companies.

Some days after, Mr. C. called on McC., and two policies, one in each of those companies, were delivered to him for $3,750, whereby Mrs. C.'s mortgage interest was insured for one year.

These policies were delivered to Mrs. C. and retained by her.

When the agent notified the companies of the issue of these policies, they directed him to cancel them, but it was never done.

Instead of canceling, McCarthy applied to French & Smith, the defendant's agents at Rochester, for re-insurance on the risk taken in the Commonwealth Company.     They refused.     In a day or two McC. was directed to cancel the Excelsior policy, and he again called on defendant's agent to reinsure.     In a short time after this application, defendant's agent inquired of McCarty whether a direct insurance of the interest of Mrs. C. would not be as well as a re-insurance of the risks in the two insurance companies, and he told them it would, and thereupon defendant's agent issued two binding receipts, as they are called, whereby the defendant insured Mrs. C. for fifteen days, unless policy was issued in the mean time, and in a few days thereafter a policy was issued by defendant's agent, insuring Mrs. C.'s interest in the mill for one year for $7,500.     The premium on this policy was paid by Connolly for his wife after the destruction of the building by fire. The policy issued by defendant was not delivered by McC. to Mrs. Connolly till after the fire, nor was she or her husband aware of its existence until then.

The building was destroyed by fire on the 23d December,

1870, and proofs of loss duly made and delivered to the several companies, including the defendants.

When the premium on the defendant's policy was paid by C. on behalf of his wife, the defendant's agent gave a receipt for the amount under protest, as claimed by defendant's witnesses, but without protest, as claimed by the plaintiff's witnesses. The amount so paid to the agent was remitted to defendant by them and retained, but subsequently offered back, but not received.

When this money was sent by the agent and received by the company, they had been told that Mrs. C. still held the policies issued by the Commonwealth and Excelsior companies.

Mrs. C., in the proofs of loss delivered to the Commonwealth Insurance Company, stated that the policy from defendant's company was procured by McC., or by his direction or procurement, and entirely without the knowledge, privity, authority or consent of her, said Mrs. C.; that she had no notice, knowledge or information in relation thereto until after the burning of the mill, and McC. retained said policy in his hands, or in the hands of his clerk, until after said fire; that she had no knowledge or notice that it was the intention of McC. to substitute defendant's policy for those issued by the other two companies until after the fire.

It does not appear by the case that the mortgages have ever been assigned by Dows to Mrs. C., nor is she entitled to such assignment until the whole purchase-price is paid.

Mrs. C. has assigned her interest in the policies issued by defendant to the plaintiffs.

The plaintiffs bring this action to recover of defendants: 1st, as re-insurers of the risks taken by the Commonwealth and Excelsior companies; and 2d, as assignees of Mrs. C. of the policy issued by defendants to her.

*W. F. Cogswell,* for the plaintiff.

*A. J. Parker,* for the defendant.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

Excelsior Fire Insurance Co. *v.* Royal Insurance Co. of Liverpool.

Mullin, P. J.   The Commonwealth and Excelsior compa-
nies must be deemed to concede their liability upon the poli-
cies issued by them to Mrs. C.   It cannot be claimed, there-
fore, that those policies have ever been canceled or surren-
dered.

If the defendant's policy is an operative, valid contract in
the hands of the plaintiffs as assignees of Mrs. C., she had
insured her interest in the mills to the extent of $15,000,
although she had in fact paid towards the mortgage but $7,500
up to the time of the fire, and we are not informed that she
has paid anything since.

The agreement between Mrs. C. and Dows is not before us.
We must assume that it was an agreement by Dows to sell,
and, on payment of the purchase-money by Mrs. C., to assign
the mortgages to her, and on her part a covenant to pay such
purchase-price.

If this is the substance of the agreement, Mrs. C., by virtue
of it, became the equitable owner of the mortgages, and enti-
tled to insure them to the extent of her interest, which was
the amount due or to become due on the mortgages.   Her
covenant to pay stood in lieu of the money, the legal title to
the mortgages being retained by Dows as security for the pay-
ment of the purchase-money.   (Angel on Insurance, § 66, and
cases cited.)

In the section cited the author speaks of insurance by the
purchaser of real estate by contract; such purchaser is in
equity deemed the owner, and entitled to insure to the extent
of the value, although he has not paid the purchase-money,
but only obligated himself to pay.   The same doctrine must
apply to the purchaser of personal property, who has an
equitable title to it merely.

The defendant's policy contained a provision that in case
there should be any insurance in any other company extend-
ing to the property thereby insured, it (the defendant) should
only be liable to pay its ratable proportion of the damage
ascertained in accordance with the conditions of said policy.

The result is that, treating all these policies as valid, the

insured could recover of the defendant but one-half of the amount of the loss. (*Blake* v. *Exchange Mutual Ins. Co.*, 12 Gray, 265.)

To escape this result the plaintiffs' counsel insists that the defendant is a re-insurer of the property, and in that character liable to the Commonwealth and Excelsior Insurance Companies for the whole amount of the loss.

The policy of the defendant does not purport to be, nor is it in its terms, a contract of re-insurance, but on the contrary is a contract for insurance between the defendant and the equitable owner of the property, of her interest in it.

But it is said that the plaintiffs' agent applied for re-insurance, and the policy was issued by defendant for the purpose of re-insuring the risk taken by the plaintiffs.

It is true that McCarthy, the agent for both the Commonwealth and Excelsior companies, applied to defendant's agent to re-insure. The agents of defendant refused to re-insure, but expressed their willingness to issue a policy equal to the amount insured in the other companies, and this was assented to by McCarthy. In making the application to re-insure and in obtaining the new policy McC. was not acting for any person. He was disobeying the instructions of his principals in not canceling the policies issued in their names, and sought the re-insurance to protect his principal in case of loss, and in order to retain the custom of Connolly, who had been accustomed to do business with him as agent.

The defendant was not informed that a re-insurance had been applied for; its officers must have understood that the application on which they were called to act was for an insurance by Mrs. C.

If the defendant was chargeable with the acts of the agent not communicated to them, but which were wholly inconsistent with the knowledge communicated by him and with the act which he called on its officers to perform, it cannot be said on the proof in the case that the defendant's agent understood that the policy issued by the defendant was to operate as a re-insurance. If they issued the policy for the purpose of

taking the place of the two policies issued by the other companies, and these policies instead of being canceled were kept in life, one of two results would follow, either defendant's policy would be void, or under the condition that if other insurance was effected on the same property, defendant's would only be liable *pro rata.* It is not claimed that it is void, hence the other policies were not canceled. But if it was, the objection was waived by the receipt of the premium.

As between Mrs. C. and the plaintiffs it may well be that when Mrs. C. accepted the defendant's policy as an operative instrument between her and the defendant, the plaintiffs might insist that they were entitled to the benefit of it as being made for their benefit in the case they paid in the event of loss such sum as they were liable for to her.

It seems to me the plaintiffs cannot recover on the first count in their complaint.

I am of opinion, however, that the plaintiffs are entitled to recover as assignees of Mrs. C. Notwithstanding the agent who effected the insurance with defendant was wholly unauthorized to act for her in the business with defendant, it was competent for her when it came to her knowledge to ratify the act and thus render the policy valid *ab initio.* (*Finney* v. *Fairhaven Ins. Co.,* 5 Metc., 192; *Thompson* v. *The American Tontine L. and S. Ins. Co.,* 46 N. Y., 674.)

And the ratification is sufficient if made after the happening of the loss. (*Finney* v. *Fairhaven Ins. Co. supra ; Routh* v. *Thompson,* 13 East, 274 ; *Hagedorn* v. *Oliverson,* 2 M. & S., 485.)

It is not necessary to inquire whether the ratification would have been operative if the premium had not been paid to and received by the defendant. The fact of such payment is conceded, but the force of it is sought to be avoided, because :

1st. It was under protest ; 2d. It was offered to be returned ; 3d. Because when it was received the defendant's agents did not know that the policies issued by the other two companies had not been canceled.

It is not true that when the money was paid by Mrs. C.'s

agent it was not known to defendant's agent that the other policies had not been canceled. That fact was known to them as early as noon of the day succeeding the fire.

The offer, to return could not deprive Mrs. C. of rights which had attached when the money was paid, nor of the benefit of any inference which resulted from defendant's receipt of the money with knowledge of the non-cancellation of the other policies.

As to the payment under protest, it is affirmed on the one side and denied on the other. If it was important, it presented a question for the jury, but no request was made to submit it to the jury, and it was the province of the court under such circumstances to determine the fact, and its decision is final.

If the plaintiffs had purchased the policy in question of Mrs. C., unconnected with their liability upon the policies issued by them, I should entertain doubts whether the purchase would have been valid. But the policy was in fact procured by their agent for their benefit and protection, but in the name of Mrs. C., and for this purpose I do not doubt their right to take the policy by assignment. I intend to embrace in this proposition the receiver of the Commonwealth company.

It follows that the plaintiffs are entitled to recover one-half the amount insured by defendant's policy, and if her counsel will stipulate to reduce the verdict to that sum judgment may be entered for it, but if he shall not so stipulate the verdict is set aside and a new trial ordered, costs to abide event.

Judgment accordingly.